UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                    Plaintiff,

        v.


THE PREMISES, BUILDINGS, APPURTENANCES,
IMPROVEMENTS, AND REAL PROPERTY
LOCATED AT 15 ELIZABETH DRIVE, LOCKPORT,
NEW YORK, THAT IS, ALL THAT TRACT OR PARCEL
OF LAND, SITUATE IN THE TOWN OF LOCKPORT,
COUNTY OF NIAGARA, STATE OF NEW YORK, AND
MORE PARTICULARLY DESCRIBED IN A CERTAIN DEED
RECORDED IN THE NIAGARA COUNTY, NEW YORK
CLERK'S OFFICE, INSTRUMENT NO. 2015-01524

                                    Defendant,

OSTOLSKI PROPERTY MANGEMENT LLC,
MICHAEL OSTOLSKI, DAWN OSTOLSKI,
and DAVID L. ULRICH,

                                    Claimants.
_____

23-CV-01298-LJV-MJR
DECISION AND ORDER

        On May 12, 2025, the Hon. Lawrence J. Vilardo, United States District Judge for

the Western District of New York, signed an Agreement and Joint Motion for Interlocutory

Sale and Order as to the defendant property located at 15 Elizabeth Drive, Lockport, New

York (the "Agreement"). (Dkt. No. 44) The Agreement was jointly negotiated and agreed

to by counsel for plaintiff United States; counsel for claimants Michael Ostolski, Dawn

Ostolski, and Ostolski Property Management (collectively referred to as "Ostolski"); and

counsel for claimant David Ulrich ("Ulrich"). (*Id.*) The Agreement provided that the

defendant real property (the "Property"), which was the subject of parallel criminal and

civil forfeiture proceedings, was to be liquidated by interlocutory sale, pursuant to Rule G(7)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (*Id.*)

At the time the parties entered into the Agreement, Ostolski was the titled owner of the Property and Ulrich held the mortgage as to the Property. (Dkt. No. 44) The Agreement provides that, through the date of the sale of the Property, Ostolski was to pay and keep current all property tax payments and mortgage payments, *inter alia*. (*Id.*) The Agreement further states that Ostolski was to provide his counsel all rents collected from the tenants of the Property, as well as any insurance proceeds, to be held in an attorney escrow account. (*Id.*) According to the Agreement, the collected rents and insurance proceeds were to be used to pay any outstanding payment obligations due and owing on the Property, from the date of the Agreement through the date of sale, including but not limited to property insurance, utility payments, property taxes, and property repairs. (*Id.*)

According to Ulrich, when the civil forfeiture proceedings commenced in or around December of 2023, Ostolski stopped making mortgage payments and stopped paying property taxes.[1] (Dkt. No. 51-1, ¶ 4) On August 21, 2025, the Property was sold for $160,000. (*Id.* at Exhs. B, C) At that time, the principal balance of the mortgage, together with interest, fees, and penalties, was over $200,000. (*Id.* at pg. 3) In addition, at the time of closing, there were outstanding property taxes and refuse fees in the amount of $28,033.03. (*Id.*) Ulrich was required to pay the outstanding taxes and fees in order to effectuate the sale of the Property. (*Id.* at pg. 3, Exh. C) Ulrich also replaced two HVAC

---

[1] Ostolski does not appear to dispute this assertion.

units at the Property, prior to closing, for a total cost of $5,850.00.[2] (*Id.* at pg. 3) Ulrich also paid the listing agent's commission, on behalf of Ostolski, in the amount of $8,000. (*Id.* at ¶ 14, Exh. C) These tax payments and other expenses resulted in out-of-pocket expenditures to Ulrich in the amount of $37,383.02.[3] (*Id.* at ¶ 17)

Ulrich has now moved for an order from this Court directing that certain insurance proceeds be distributed to him in partial payment for his out-of-pocket expenditures related to the sale of the Property, as provided for in the Agreement. (Dkt. No. 51) Specifically, Ulrich seeks remittance of a $29,481.27 insurance payment made for water damage to the Property, as a result of a flood that occurred sometime in late March or early April of 2025. (*Id.* at ¶¶ 2, 3) The insurance payment is currently being held in escrow by Ostolski's counsel, pursuant to the terms of the Agreement.[4]

Ostolski opposes the payment of these insurance proceeds to Ulrich. (Dkt. No. 52, 54) Ostolski claims that because the insurance claim was made before the parties entered into the Agreement, it was never contemplated that the insurance proceeds would be used for the payment of property taxes or other expenses not related to damages caused by the flood. (*Id.*) Stated another way, Ostolski claims that they did not consider the Agreement be "retroactive," but instead thought it was meant to apply only to insurance claims "made in the future." (*Id.*)

Ostolski's position is without merit. The Agreement expressly requires Ostolski to turn over any insurance proceeds, which are then to be used to satisfy outstanding

---

[2] Ostolski partially reimbursed Ulrich for this expense, from rents collected under the Agreement, in the amount of $4,500. (Dkt. No. 51-1, ¶ 13)

[3] Ostolski does not appear to dispute that Ulrich made these payments.

[4] Ulrich previously reported to the Court that Ostolski failed to remit the insurance payment to his attorney. (Dkt. No. 48) On January 16, 2026, this Court issued a text order requiring Ostolski to turn over any and all insurance proceeds in his possession to his counsel, as directed in the parties' Agreement. (Dkt. No. 50) Ulrich has indicated that Ostolski ultimately complied with the Court's order.

payment obligations due on the Property at the time of sale, including but not limited to property taxes, mortgage payments, and repairs. It is undisputed that Ulrich paid outstanding property taxes and other expenses, owed by Ostolski, in order to complete the sale of the Property.[5] The language in the Agreement and the record before the Court belie Ostolski's claim that the Agreement applies only to future insurance claims. The Agreement directed the liquidation of the Property through sale. Thus, there was little to no reason for the parties to believe that future insurance claims would arise. Moreover, Ulrich's counsel has provided correspondence indicating that the insurance proceeds at issue here were specifically discussed by the parties during negotiations of the Agreement. (Dkt. No. 53-1. Exh. A)  In fact, Ostolski consented to the insurer naming Ulrich as a payee on the proceeds. (Dkt. No. 53-2, Exh. B)

Ostolski also argues that because the insurance claim was based on water damage to the Property as a result of the flood, the use of those insurance proceeds to pay for property taxes or mortgage expenses could be considered fraudulent. Ostolski offers no legal authority in support of this statement, nor does he provide a copy of the insurance contract.[6] As stated previously, the parties, through their counsel, all agreed that the insurance proceeds at issue here were to be used to pay any outstanding property taxes and other expenses owed as to the Property, at the time of the sale. The Agreement, which was signed by all the parties and Judge Vilardo, reflects this consensus.

---

[5] Ostolski seems to object to the fact that Ulrich replaced the HVAC system, claiming either that the repair was unnecessary or that he did not authorize Ulrich to do so. However, Ostolski does not appear to dispute that Ulrich paid $28,033.03 in outstanding property taxes and refuse fees at the time of the sale, as well as an $8,000 listing agent commission on behalf of Ostolski.

[6] The response in opposition to Ulrich's motion consists only of an affirmation by Michael Ostolski. (Dkt. Nos. 52, 54) Ostolski's affirmation states "I have been advised by my attorney, and I verily believe that the payment of the mortgage and real estate taxes may be deemed insurance fraud." (Dkt. No. 54, ¶ 13) Ostolski's counsel does not provide a memorandum of law. The Court scheduled oral argument of Ulrich's motion for April 2, 2026, and counsel for Ostolski failed to appear.

4

Pursuant to Paragraph 3(f) of the Agreement, Ulrich's motion for partial payment of his out-of-pocket expenditures related to the sale of the Property is granted. (Dkt. No. 51) The Court directs that the insurance proceeds in the amount of $29,481.27 be distributed to Claimant David L. Ulrich.

**SO ORDERED.**

Dated:  April 14, 2026
  Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge